# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Rural Water District No. 2, Creek County, Oklahoma, an agency and legally constituted authority of the State of Oklahoma,  )<br>)<br>)<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>)<br>City of Glenpool, an Oklahoma municipality and the Glenpool Utility Services Authority, a public trust,  )<br>)<br>)<br>)<br>)<br>)<br>)<br>Defendants.  ) | Case No. 11-CV-441-JHP-PJC |

## OPINION AND ORDER

Now before the Court is the Joint Motion for Order Preliminarily Approving Agreement of Compromise, Settlement and Release ("Settlement Agreement") (Dkt.# 112). This matter came on for hearing January 20, 2015. Counsel for Plaintiff, Michael Davis and Steven Harris were present, and Michael Linscott and Lowell Peterson appeared on behalf of the Defendant. The Court heard argument in regard to the motion and ordered supplemental briefs (Dkt.# 115). For the reasons set forth below, the Court denies the Joint Motion for Order Preliminarily Approving Agreement of Compromise, Settlement and Release (Dkt.# 112).

An accurate and historical background of this case is set forth in the Tenth Circuit case, *Rural Water District No. 2 v. City of Glenpool*, 698 F.3d 1270 (2012). After remand, this case was set on a new schedule entered at the conclusion of a status and scheduling conference (Dkt.# 44). However, the Court was notified on August 21, 2014, the case had settled, and an administrative closing order was entered (Dkt.# 108). The parties were given until November 20, 2014, to file their closing papers (Dkt.# 109). On November 7, 2014, the parties filed a Motion for Extension of Time, and were granted until March 1, 2015 to file their closing documents (Dkt.# 111). On November 18, 2014, the instant motion was filed (Dkt.# 112). After a thorough

review of the Proposed Agreement of Compromise, Settlement and Release, and the attached Proposed Settlement Agreement, the Court finds the following issues preclude the Court's affirmation.

Initially, the Court notes a major contradiction. While on the one hand the parties seemingly *waive* all their appellate rights, on the other hand, they *retain* all their appellate rights. Specifically, at page 1 of the Settlement Agreement, "the parties waive all rights of appeal and all rights to challenge collaterally the judgment on any grounds, once entered by the District Court." However, at page 22 of the Settlement Agreement, the parties reserve the right to assert any claim arising out of the Settlement Agreement, under 7 U.S.C. § 1926(b), *or any other right under a state or federal statute*. See also, the following excerpts from the Settlement Agreement:

**Page:**

| | |
|---|---|
| 1 | "EXCEPT that nothing herein shall constitute a release, discharge or covenant not to sue on any claim relating to or arising out of this Agreement, and Creek-2 specifically retains the right to assert 7 U.S.C. §1926(b) protection as to any property within the Creek-2 Territory as defined by this Agreement." |
| 2 | "EXCEPT, that nothing herein shall constitute a release, discharge or covenant not to sue on any claim relating to or arising out of this Agreement." |
| 22 | "1926(b) Rights Retained in Creek-2 Territory. Creek-2 shall have the unchallenged right to enforce Creek-2's rights under 7 U.S.C. § 1926(b) or other applicable state or federal statute, within any part of Creek-2 Territory upon which Glenpool has encroached." |

Further, the parties argue the Settlement Agreement "will save money and judicial resources," (Plaintiff's Brief on the Issue of the Court Entering a Consent Decree at 3), however, the parties also acknowledge there may be unanticipated claims, and claims of third parties. As to unanticipated claims, the Court finds it ironic that an "unanticipated claim" from the 1992 Settlement Agreement is the basis of the instant lawsuit. In fact, as acknowledged by the Tenth Circuit Court of Appeals, in the 1992 Settlement Agreement which forms the basis of the instant lawsuit, Plaintiff also "agree[d] it [would] not make a claim of exclusivity as to 'the area of

agreement.' " Therefore, the Court is reluctant to assume the current Settlement Agreement would provide any more reliability than the one it is intended to replace. See, Settlement Agreement at 19, "This Agreement replaces and supersedes entirely the 1992 Settlement."

In regard to the unanticipated claims of third parties, the Court is just as hesitant to interfere. For example, many of the terms of the Settlement Agreement purport to create rights, and bind future landowners (not parties to this Settlement Agreement) into perpetuity. See, the following excerpts from the Settlement Agreement:

**Page:**

2, 3    "Effect and Scope of Releases The Parties acknowledge that by reason of the releases contained herein, ***they expressly assume the risk of unknown and unanticipated claims*** against one another concerning one another concerning the matters so released, ***and agree that such releases apply to such unknown and unanticipated claims.*** In connection therewith, the ***Parties expressly waive the benefits of any statute or law with respect to unknown and unanticipated claims concerning the matters released herein.***

8    ".....which said Creek-2 customers or connections shall be retained as permanent water customers or connections of Creek-2 into perpetuity ..... and shall remain Creek-2 water customers into perpetuity."

11    "The Parties agree that neither Creek-2 nor Glenpool shall have any responsibility to refund to any transitioning customer, the Benefit Unit fee paid by the customer..."

12    "Each new/added meter connection in the category described above ... is not, and never shall be, subject to either of the Meter Connection Fee or the Royalty payment."

| | |
|---|---|
| 13 | "To protect the Parties, and their Shared Utility Customers, Creek-2 shall affirmatively condition the initiation of domestic water service *to any subsequent water customers* at an address connected to the Glenpool wastewater collection system...." |
| 14 | "This provision shall survive the expiration of the Term of this Agreement and such expiration shall not change the obligations of the Parties under this Section of the Agreement with respect to Shared Utility Customers." |
| 18 | "Creek-2 shall have the right into perpetuity..." |

Another troubling aspect of the proposed Settlement Agreement concerns the parties' request that the Court retain jurisdiction for a term of 37 years. See, page 23 of the Settlement Agreement. The future of the City of Glenpool cannot be predicted for 1 year, let alone 37 years. The size, structure, landscape, population and infrastructure of the City of Glenpool may change dramatically, and cannot be limited by a Settlement Agreement which purports to bind future landowners.

Additionally, the parties "seek additional security through the Court's entry of the proposed Consent Decree that incorporates the Settlement Agreement, finds it to be fair, reasonable, and does not violate statutory or constitutional law, and is enforceable by the court without future litigation ..." (Defendant's Brief in Support of Consent Decree)(Dkt.# 117 at 2-3).

This Court can neither find it reasonable, nor find that it does not violate statutory or constitutional law. Of specific concern is the clause which requires the City of Glenpool to comply with the Agreement *irregardless of the fact the Water District's rights under §1926(b) may expire*. See, page 10 of the Settlement Agreement: "The payment obligations described in Section 6 shall be paid during the Term of the Agreement, regardless of whether Creek-2 remains federally indebted and regardless of whether Creek-2 is entitled to 7 U.S.C. §1926(b) protection during the Term. This clause of the Settlement Agreement binds the City of Glenpool beyond its' federal statutory obligation.

Further, the Settlement Agreement entitles Creek-2, in its sole and exclusive direction, to make water consumption adjustments, and leak adjustments. See page 13 of the Settlement Agreement, "Creek-2 shall be entitled to make water consumption adjustments such as leak adjustments in its sole and exclusive direction...." While this may be a legitimate function of Creek-2, it seems plausible that sometime during the next 37 years, a landowner(s) may wish to challenge these adjustments.

The parties also expect the Court to guarantee they have complied with the Oklahoma Open Meeting Act. See page 24 of the Settlement Agreement, "Approval. Creek-2 and Glenpool each *warrant to the other* that they have followed all applicable statutory procedures relative to the Oklahoma Open Meeting Act ....." The Court does not have the requisite knowledge of the settlement to guarantee the parties have complied with the Oklahoma Open Meeting Act.

Finally, the parties represent the United States Department of Agriculture ("USDA") has given its approval of the Settlement Agreement, subject to certain monetary payments received by Creek-2 from the City of Glenpool, being paid over to the USDA. Plaintiff's Brief on the Issue of the Court Entering a Consent Decree, Dkt.# 116 at 3. "Although the settlement agreement itself specifies that Creek-2 is not obligated to pay any funds to the USDA derived from the settlement, Creek-2 has nevertheless, agreed with the USDA to pay certain monies over to the USDA, in order to gain USDA approval of the settlement. Id. at n.2 page 3. The Court is not privy to this third party agreement with the USDA, and therefore cannot attest to this addendum.

In conclusion, as stated *supra*, the parties conclude the proposed consent decree procedure will save money and judicial resources. However, in order for the Court to approve this Settlement Agreement, expert testimony would be necessary to validate the definitions, calculations, and areas of agreement set forth at pages 3-19. The anticipated expert testimony could take several days, days which would be more productively spent in a trial setting before a jury.

Accordingly, the Joint Motion for Order Preliminarily Approving Agreement of Compromise, Settlement and Release ("Settlement Agreement") (Dkt.# 112) is denied.

**IT IS SO ORDERED this 3rd day of February, 2015.**

_____
James H. Payne
United States District Judge
Northern District of Oklahoma